**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE THE PRUDENTIAL INSURANCE COMPANY OF AMERICA | Civ. No. 95-4704 (DRD) |
| SALES PRACTICES LITIGATION | **OPINION** |
| ───────────────────────────── | |
| THIS DOCUMENT RELATES TO: | |
| ALFRED W. DEYTER and MARY M. DEYTER, Individually and STEVEN M. BROWNELL, as Trustee on behalf of the DEYTER FAMILY IRREVOCABLE LIFE INSURANCE TRUST, dated November 8, 2000 | |

Reid L. Ashinoff, Esq.
Edward J. Reich, Esq.
Rachel G. Balaban, Esq.
SONNENSCHEIN NATH & ROSENTHAL, LLP
1221 Avenue of the Americas
New York, New York 10020
*Attorneys for Defendant The Prudential Insurance Company of America*

Jack B. Nichols, Esq.
81 North Magnolia Avenue, Suite 414
Orlando, Florida 32803
*Attorney for Plaintiffs*

## OPINION

**DEBEVOISE, Senior District Judge**

  Defendant, The Prudential Insurance Company of America ("Prudential"), moves to

enforce the Final Order and Judgment in <u>In re The Prudential Ins. Co. of Am. Sales Practices</u>

Litig., 962 F. Supp. 450 (D.N.J. 1997), aff'd, 148 F.2d 283 (3d Cir. 1998), cert. denied, 525 U.S. 1114 (1999), and enjoin Plaintiffs, Alfred and Mary Deyter, and Steven Bromwell, as Trustee on behalf of the Deyter family irrevocable life insurance trust (collectively referred to as "Plaintiffs") from proceeding with the amended complaint in an action captioned Alfred W. Deyter, et al. v. Barry Freedman, et al., Case No. 02-CA-001544(OC), and currently pending in the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County Florida ("the Florida Court") (the "Deyter Action").  This is the latest in a long series of motions by Prudential and/ or its agents seeking permanent injunctions to enforce the Final Order and Judgment.  For the reasons set forth below, Prudential's motion will be granted.

### FACTS AS ALLEGED IN THE COMPLAINT

Plaintiffs filed the amended complaint in this matter in the Florida Court on July 29, 2005.  The amended complaint asserts claims against Prudential, several of its subsidiaries (all referred to as "Prudential"), and Prudential agents Barry Freedman ("Freedman") and Thomas Alexander ("Alexander") for fraud and deceit, fraudulent misrepresentation, and negligence. These claims arise in connection with Plaintiffs' $400,000 Prudential life insurance policy purchased in 1992, which listed their daughter as the beneficiary ("the 1992 Policy"), and a $350,000 life insurance policy purchased in 2000 ("the 2000 Policy").

Plaintiffs allege that in 1992 they were informed by the Prudential agent who sold them the policy that they would only be required to make premium payments on the policy for a period of ten years.  The Prudential agent informed them that after the ten year period ended, the surplus on the value of the policy would cover the remaining premium payments.  This practice is

commonly referred to as "vanishing premiums." Plaintiffs allege that after signing the 1992 policy they were not informed of the pending class action lawsuit against Prudential, which encompassed claims stemming from all Prudential life insurance policies entered into between January 1, 1982 through December 31, 1995 ("the class period").

From 1992 through 2000 Plaintiffs continued the timely payment of their premiums, and to their knowledge this time period was uneventful. The next time Plaintiffs were contacted regarding the 1992 policy was in 2000, when Freedman and Alexander (collectively referred to as "the agents") contacted Plaintiffs, wishing to discuss the 1992 policy. The agents advised Plaintiffs that they should place this policy in an irrevocable trust. The agents advised Plaintiffs that the transfer of ownership would protect the policy from losing value in the event problems arose with their daughter's creditors. During these discussions the agents confirmed that Plaintiffs had only one more premium payment to make on their 1992 policy.

On November 8, 2000, Plaintiffs accepted the agents' advice and transferred ownership of the 1992 policy from their daughter to an irrevocable trust owned by a Prudential subsidiary. At the urging of the agents, Plaintiffs also entered into a new $350,000 life insurance policy ("the 2000 policy"). The agents advised that the 2000 policy would not require the payment of premiums because these could be paid by the $128,000 surplus from Plaintiffs' other policies (Plaintiffs had previously entered into additional Prudential life insurance policies in 1951, 1952, 1981, 1982, and 1986). The amended complaint alleges that the agents advised that this policy could be converted to a "paid-up" policy at any time. The amended complaint further alleges that the agents submitted fraudulent statements to Prudential overstating Plaintiffs' net worth at $2,000,000 in order to show that Plaintiffs would be able to pay the premiums on this new

3

policy.

Over the course of the next four years Plaintiffs realized that the agents had greatly misrepresented numerous facts regarding payment of premiums, the value of their policies, and estimated returns on investments.  Prudential charged Plaintiffs $900 for setting up the trust, and $1,000 annually for maintaining the trust, although the agents had told them they would only be charged a nominal fee.  Plaintiffs also learned that they still had to pay annual premiums of $9,250 and $13,700 on their 1992 and 2000 policies (respectively) despite the agents' representations to the contrary.  Additionally, a high-yield mutual fund, which Plaintiffs purchased upon the agents' advice in order to help pay the premiums, did not have the returns promised by the agents.  In 2002 Prudential sent a notice of payment to the owner of the trust for the premium on  the 1992 policy.  Plaintiffs were not advised of this notice until 2003 after Prudential cancelled the policy for not receiving payment, and unilaterally converted the policy to a $210,014 paid-up policy.  This was done contrary to the terms under which the selling agent sold Plaintiffs the policy in 1992.

In their complaint, Plaintiffs have alleged that the agents committed fraud and deceit, which resulted in Plaintiffs losing the benefit of the bargain they made when purchasing the 1992 policy.  Plaintiffs also claim that Prudential: (1) committed negligence in failing to supervise and/or properly instruct its employees; and (2) is vicariously liable for the agents' fraud and deceit, which resulted in Plaintiffs losing the benefit of the bargain they made when purchasing the 1992 policy.

Prudential seeks to enjoin the amended complaint, insofar as it asserts claims or seeks damages based on, or relating to, the issues previously resolved in the Class Action Settlement,

including without limitation, engaging in motion practice, pursuing discovery, presenting evidence or undertaking any other action in furtherance of said action.  Prudential argues that insofar as the amended complaint relates to policies originating during the class period or the benefits of the bargains made when negotiating those policies, Plaintiffs failed to opt out of the class action and should be enjoined pursuant to the resultant settlement agreement.[1]

## DISCUSSION

The Court of Appeals has repeatedly affirmed that this court is empowered under the All-Writs Act, 28 U.S.C. § 1651, and the exceptions to the Anti-Injunction Act, 28 U.S.C. § 2283, to protect its jurisdiction in overseeing the administration of this class action and to prevent interference with its orders.  E.g., In re The Prudential Ins. Co. of Am. Sales Practices Litig.: LaMarra, 314 F.3d 99 (3d Cir. 2002).  The previous opinions in this case clearly illustrate why the Court is bound to enforce the agreement and must enjoin parties asserting claims covered by the settlement and corresponding order of the Court.[2]  There is no need to repeat those reasons.

_____

[1] See In re The Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450 (D.N.J. 1997).  The settlement provided that class members were required to opt out by December 19, 1996, or be subject to the claims settlement and alternative dispute resolution ("ADR") process made part of the settlement.  The court approved the class notice procedure provided in the settlement, and all class members are deemed to have received timely notice and be subject to the personal jurisdiction of the court regardless of whether they had actual notice or not.  See generally In re Prudential Ins. Co. of Am. Sales Practices Litig., 177 FRAT 216 (D.N.J. 1997).  Plaintiff failed to opt out and was enjoined from pursuing any claims covered in the court's order.

[2] The Final Order and Judgment permanently enjoined all policyholders who had not timely excluded themselves from the Settlement Class, and those acting on their behalf, from bringing or pursuing individual claims against Prudential and its agents based on or relating to facts and circumstances underlying the claims and causes of action in the class action or the released transactions as defined in the stipulation of settlement.  In re The Prudential Ins. Co. of

The question to be addressed in deciding Prudential's present motion is whether Plaintiffs' claims stemming from the 1992 and 2000 policies fall under the agreement by the parties in the class action settlement.

The claims described in the class action specifically dealt with misrepresentations by Prudential agents concerning:

> ...
> (ii)    the number of out-of-pocket cash premium payments required to be paid for a policy and/or the benefits to be realized or paid based on a particular number of cash premium payments (sometimes referred to as "vanishing premiums");
> ...

Additionally, Section J of the settlement agreement dated October 28, 1996 is entitled "Release and Waiver, Order of Dismissal."  As part of the settlement agreement, Plaintiffs and all class members agreed to a release and waiver as follows:

> a.    **Plaintiffs and all Class Members hereby expressly agree that they shall not now or hereafter institute, maintain or assert against the Releasees,** either directly or indirectly, on their own behalf, on behalf of the Class or any other person, **and release and discharge the Releasees from, any and all causes of action,** claims, damages, equitable, legal and administrative relief, interest, demands or rights, **of any kind or nature whatsoever**, whether based on federal, state or local statute or ordinance, regulation, contract, common law, or any other source, **that** have been, **could have been, may be or could be alleged or asserted now or in the future by Plaintiffs or any Class Members against the Releasees in the Actions** or in any other court action or before any administrative body (including any state Department of Insurance or other regulatory commission), tribunal or arbitration panel **on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transaction and servicing relating to the Released Transactions, which include without limitation:**
> ...
>     (ii)  **any or all acts omissions, facts, matters, transactions, occurrences, or any oral or written statements or representations**

---

Am. Sales Practices Litig., 962 F. Supp. at 566.

**allegedly made in connection with or directly or indirectly relating to the Released Transactions** including without limitation any acts, omissions, facts, matters, transactions, occurrences, or oral or written statements or representations relating to:

     (a)    the number of out-of-pocket payments that would need to be paid for the policies;

     (b)    the ability to keep or not to keep a Policy in force based on a fixed number and/or amount of premium payments... and/or the amount that would be realized or paid under a Policy based on a fixed number and/or amount of cash payments... in the form of (x) cash value;

     (c)    the nature, characteristics, terms, appropriateness, suitability, descriptions and operation of Policies;
...

     (l)    the use of loans or contract values from existing policies or Policies to pay premiums on new policies, or any representations, promotions or advertising regarding such matters;

(iii) any or all acts, omissions, facts, matters, transactions, occurrences **or oral or written statements or representations in connection with or directly or indirectly relating to the Stipulation or the settlement of the Actions**...

     (f)    It is the intention of Plaintiffs and Class Members in executing this Release fully, finally and forever to settle and release all matters, and all claims relating thereto, which exist, **hereafter may exist**, or might have existed pertaining to the Defendants' insurance sales practices (whether or not previously or currently asserted in any Actions) with regard to the Policies.

Settlement Agreement § J.1.

The above excerpts from the settlement agreement clearly prohibit claims relating to

"vanishing premiums" on Policies which were entered into during the class period.  Plaintiffs'

complaint, insofar as it alleges that the agents' misrepresentations and Prudential's negligence caused them to "lose the benefit of the bargain they made" when they entered into policies covered under the class period must be enjoined.  The benefit of the bargain they made came in the form of vanishing premiums.  This is exactly the type of "benefit" that the class action examined, rectified, and disposed of.  Any further claims regarding these benefits are barred by the Settlement Agreement.

Although Plaintiffs may not have personally realized they had claims until years after the settlement agreement, this Court has previously ruled that all class claims not raised before the settlement agreement are not allowed.  "If any misrepresentation or fraud occurred in the sale of a life insurance policy to a class member during the Class Period, the resultant injury now exists. Even if a policyholder was not aware prior to receiving the Class Notice that he or she had been injured, the policyholder now knows about his or her injuries by virtue of the Class Notice."  In re Prudential, 962 F.Supp. at 521.  Said notice to the class has been deemed adequate as a matter of law regardless of whether actual notice occurred.  See Dickowski v. The Prudential Ins. Co. of Am. (In re The Prudential Ins. Co. of Am. Sales Practices Litig.), 2001 U.S. Dist. LEXIS 25228 (D.N.J. 2001).  The court has previously rejected attempts by class members to commence independent actions relating to the implementation or administration of the class settlement and must do so here again.  The permanent injunction bars Plaintiffs' actions because they failed to exclude themselves from the class and are presently asserting claims that are precluded by the settlement agreement and corresponding court order.

Plaintiffs also seek to discover and enter evidence of the class action and settlement in order to show that Prudential and its agents were aware that this type of conduct was wrongful

and constituted a continuing series of fraudulent activity.  However, to do so would require the complete re-litigation of the class action as the parties to the class have stipulated that Prudential admits no wrongdoing.  The settlement agreement clearly specified that "the Defendants make no admissions respecting the merits of the allegations made in the Actions nor any facts or claims that have been or could have been alleged against them in the Actions...."  (at ¶ 14).  If Prudential has never admitted wrongdoing, then the fact that it has been involved in a previous litigation concerning similar claims is irrelevant.

The Plaintiffs also seek through discovery and motion practice to obtain evidence involving the facts and circumstances underlying the released transactions in the class action. They argue that this information is relevant to the claims they assert that are based upon post settlement conduct.  The relevance would be that such prior conduct might, for example, establish state of mind or provide a basis for punitive damages.  However, this is precisely the kind of conduct that the class action settlement prevents class members from using.  To permit such discovery and the use of such evidence would go far to deprive the class action defendants of the benefits for which they bargained when agreeing to the settlement.

The Court will therefore enjoin Plaintiffs complaint insofar as they allege conduct encompassed in the settlement agreement, and insofar as they seek damages for loss of any benefit "bargained for" and agreed to during the class period.  The Court notes, and counsel for Prudential conceded during oral argument, that this injunction shall not prohibit Plaintiffs from asserting their claims for fraud and deception relating to the post-class 2000 policy, or relating to the agents' misrepresentations regarding the Deyter Family irrevocable life insurance trust, the high-yield mutual fund, or any of Plaintiffs' other pre/post-class accounts and policies.

9

### *CONCLUSION*

For the reasons stated above, the Court will grant Prudential's motion to permanently enjoin Plaintiffs from asserting the claims contained in the amended complaint, insofar as they assert claims or seek damages based on or relating to the issues previously resolved in the Class Action Settlement.  The injunction will include, without limitation: engaging in motion practice, pursuing discovery, presenting evidence or undertaking any other action in furtherance of said action.

 /s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

May 26, 2006

10