NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE PRUDENTIAL INSURANCE COMPANY OF AMERICA SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO: WYNNE WHITMAN, STACY WHITMAN | Civil Action No. 95-4704 (DRD)<br><br>OPINION |

**APPEARANCES:**

DENTONS US LLP
by:  Edward J. Reich, Esq.
101 JFK Parkway
Short Hills, New Jersey 07078
889 Gregory Drive
Brick, NJ  08723
    *Attorneys for the Prudential Ins. Co. of America/Movant*

CARROLL McNULTY & KULL LLC
by:  Joseph P. McNulty, Esq.
     Frank M. Falcone, Esq.
P.O. Box 650
Basking Ridge, New Jersey 07920
    *Attorneys for Wynne Whitman and Stacy Whitman*

**Debevoise, Senior U.S. District Judge**

In 1997 the Court certified a settlement class and approved the settlement of a nationwide class action against Prudential Insurance Company alleging that Prudential agents had engaged in deceptive, fraudulent, and misleading sales practices with respect to the sale of life insurance.  See In re Prudential Ins. Co. of America Sales Practices Litigation, 148 F.3d 283 (3d Cir. 1998) (approving class certification and settlement).  Presently before the Court is Prudential's motion to enjoin Wynne Whitman and Stacy Whitman from litigating Whitman v. The Prudential Ins. Co.

of America, MRS-L-2247-14 (N.J. Super. Ct., Law Div., filed Sept. 9, 2014), in the Superior Court of New Jersey, Law Division, Morris County. The Whitmans filed a memorandum of law and certifications opposing the motion on the ground that their claims for breach of the express terms of their life insurance policy contracts were not settled in the Prudential Sales Practices Litigation. Prudential filed a Reply and an additional declaration. Because Prudential has not carried its burden and for the reasons expressed below, this Court will deny Prudential's motion.

## BACKGROUND

### A.   Prudential Sales Practices Settlement

In 1994 a large group of policyholders brought a class action against Prudential alleging that they were the victims of fraudulent, deceptive, and misleading sales and marketing practices employed by Prudential's sales force. As individual and class action lawsuits began to accumulate, Prudential moved to consolidate the various federal actions in this District. On August 3, 1995, the Judicial Panel on Multidistrict Litigation granted the motion and transferred several actions to New Jersey. Prudential also removed various state actions which were centralized in this case. On October 25, 1995, plaintiffs filed the First Consolidated Amended Class Action Complaint. Prudential moved to dismiss and on May 10, 1996, the Court granted the motion in part and denied the motion in part.

On September 19, 1996, plaintiffs filed a Second Amended Consolidated Complaint, which contained essentially the same claims as the first. Plaintiffs alleged that Prudential management "implemented a fraudulent scheme to sell life insurance policies through a variety of deceptive sales practices including 'churning,' 'vanishing premium,' and 'investment plan' sales tactics." In re Prudential, 148 F.3d at 292. Plaintiffs alleged the following additional abusive sales practices: "Prudential took affirmative steps to conceal its misrepresentations;" "Prudential agents

informed the Nicholson plaintiffs to 'ignore' notices concerning lapses in their policies;" and "a Prudential agent made unauthorized withdrawals from the policy of named plaintiff Darner." Id. at 293 n.10.

On October 28, 1996, the parties filed a final Stipulation of Settlement and the Court issued an Order conditionally certifying a national settlement class, directing issuance of class notice, issuing an injunction barring certain policy holders from pursuing overlapping litigation unless the policy holder opted out of the class, and scheduling a fairness hearing. See In re Prudential, 148 F.3d at 294. After conducting a fairness hearing, the Court entered a Final Order and Judgment certifying the class and approving the settlement as fair, reasonable and adequate. See In re Prudential Ins. Co. of America Sales Practices Litigation, 962 F.Supp. 450 (D.N.J. 1997).

The settlement class consists of "all persons who own or owned at termination an individual permanent whole life insurance policy issued by Prudential . . . during the Class Period of January 1, 1982 through December 31, 1995 [with certain exceptions not relevant here, who] d[id] not timely exclude themselves from participating in the settlement." In re Prudential Ins. Co. of America Sales Practice Litigation, 261 F.3d 355, 359 (3d Cir. 2001) (affirming injunction against the Lowes' state court action). In approving the settlement, this Court found that "Prudential engaged in a systematic fraudulent marketing scheme in which its agents wrongfully induced policyholders to purchase certain Prudential life insurance policies [and] implemented its scheme through the use of false and misleading sales presentations, policy illustrations, marketing materials, and other information that Prudential approved, prepared, and disseminated to its nationwide sales force." In re Prudential, 962 F.Supp. at 473-74. The Court found: (1) Prudential used a deceptive sales practice called churning, which "refers to the removal, through misrepresentations or omissions, of the cash value, including dividends, of an existing life

3

insurance policy or annuity to acquire a replacement insurance policy," to sell policy holders replacement policies, 962 F.Supp. at 474; 261 F.3d at 359 n.2; (2) Prudential misrepresented that the premiums on its life insurance products would "vanish," but "Prudential's standardized sales presentations and policy illustrations failed to disclose that the policy premiums would not vanish and that Prudential did not expect the policies to pay for themselves as illustrated," 962 F.Supp. at 476; 261 F.3d at 359 n.3; and (3) "Prudential misrepresented to policyholders, through standard presentations and materials, that life insurance policies were equivalent to investment or savings accounts, pension maximization or retirement plans, college-tuition funding plans, mutual funds, or other investment or savings plans." 962 F.Supp. at 477; 261 F.3d at 359 n.4.

The Settlement provides for an Alternative Dispute Resolution Process whereby class members who believed they had been misled by the fraudulent and deceptive sales practices could submit a claim to Prudential. Under this process a claim was subject to a four tier review process, which included applying a set of "criteria for each of four general categories of sales complaints: (1) financed insurance (taking a loan against an existing policy in order to pay the premiums on a new policy); (2) abbreviated payment plans (using dividends from a policy to pay the premiums on that policy); (3) life insurance sold as an investment; and (4) other improper sales practices." 148 F.3d at 295. The relief afforded a claimant class member varied depending on the final score he or she was awarded.[1] Id. at 296.

---

[1] Without having to demonstrate liability on the part of Prudential, a policyholder could obtain Basic Claim relief consisting of: "(1) low interest loans to help policy holders make premium payments on existing policies; (2) enhanced value policies which allow[ed] members to purchase new policies with additional coverage paid for by Prudential; (3) deferred annuities enhanced by contributions from Prudential; and (4) the opportunity to purchase shares in designated mutual funds enhanced by a contribution from Prudential." 148 F.3d at 296. The following compensatory relief was also potentially available based on the category of claim proved: (1) for financed insurance claims, the policy holder could obtain a refund of the loans, dividends, or values improperly used or cancel the new policy; (2) for abbreviated payment claims, the policy holder

In 1998, the United States Court of Appeals for the Third Circuit affirmed the certification of the class and the determination that the above described settlement was fair, reasonable and adequate.  In re Prudential, 148 F.3d at 316, 329.

### B.     State Court Complaint Prudential Seeks to Enjoin

On September 9, 2014, Wynne Whitman and Stacy Whitman filed a complaint against Prudential in the Superior Court of New Jersey, Law Division, bearing Civil Number MRS-L-2247-14.  (ECF No. 2030-6 at 9-15.)   Plaintiffs allege in this complaint that on February 28, 1994, they each purchased a Survivorship Modified Whole Life Insurance policy from Prudential insuring the lives of their parents Gladstone Whitman and Sally G. Whitman for $2,500,000.  Plaintiffs assert that each policy expressly provides that the annual premium for the policy will remain at $54,899 throughout the duration of the policy.  They allege that beginning in 2009, contrary to this provision, Prudential increased the premium for each policy to $109,701.  Plaintiffs assert that they paid the increased premiums under protest.  They claim that Prudential breached the express terms of each policy by increasing the premium from $54,899 to $109,701.  Plaintiffs seek (1) a money judgment to compensate them for premium payments made in excess of the agreed upon annual premium of $54,899 and for litigation costs and (2) a declaratory judgment that the annual premium on each policy is and will remain at $54,899 and that the guaranteed death benefit is $2,500,000 on each policy.  (ECF No. 2030-6 at 9-15.)

---

could cancel the policy and obtain a refund of some or all of the premiums paid or keep the policy without having to make additional payments for some or all of the premiums due; (3) for investment product claims, the policy holder could cancel the policy and obtain a refund of some or all of the premiums paid or exchange the policy for an annuity; and (4) "[i]f a policyholder was misled in some other way, the policyholder [could] cancel the policy and obtain a refund of some or all of the premiums paid . . . or . . use the refund to purchase to purchase another policy."  148 F.3d at 296 n.20.

In the present motion Prudential seeks an order enjoining the Whitmans from litigating this action in the New Jersey courts. Prudential argues that an injunction is warranted to enforce the class settlement because: (1) the class settlement released Prudential from the Whitmans' claims because the Whitmans are class members and their policies do not include a term limiting the annual premium for each policy to $54,899, and (2) the class settlement released Prudential from the Whitmans' breach of contract claim. The Whitmans argue that this Court should deny the motion for an injunction because, while they are class members, their breach of contract claims were not settled in the class settlement, as the breach of contract claims do not arise from any deceptive sales practices or misrepresentations by Prudential or its agents.

## **DISCUSSION**

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Anti-Injunction Act "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286 (1970). These "exceptions are narrow and are not to be enlarged by loose statutory construction." Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." Atlantic Coast Line R.R. Co., 398 U.S. at 297. In addition, the Act cannot be evaded by addressing the order to the parties. See Atlantic Coast Line R.R. Co. 398 U.S. at 287.

The All-Writs Act, which authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. § 1651(a), "acts in concert with the Anti-Injunction Act to permit the issuance of an injunction." In re Prudential Ins. Co. of America Sales Practices Litigation, 261 F.3d 355, 365 (3d Cir. 2001) (citation and internal quotation marks omitted).

"[A] judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action" and a federal court "may release claims over which it has no subject matter jurisdiction if the state claims arise from the same nucleus of operative facts as the claims properly before it." In re Prudential, 261 F.3d at 366. The applicable exception to the Anti-Injunction Act is the "necessary in aid of jurisdiction" exception. Id. at 364-65. To determine whether the injunction Prudential seeks is necessary in aid of jurisdiction, the Court must examine whether the Whitmans are class members and whether the breach of contract and declaratory judgment claims raised in the Whitmans' complaint arises from the same nucleus of operative facts as the claims settled in the Prudential Sales Practices litigation.

The Whitmans are members of the settlement class because they purchased the whole life insurance policies in 1994 and the class includes persons whose whole life insurance policies were issued from January 1, 1982, through December 31, 1995. Prudential's first argument is that the Whitmans' state complaint should be enjoined because, contrary to the allegations in that complaint, their policies do not include a term limiting the premium to $54,899. However, the Whitmans' complaint asserts that the limitation of the premium to $54,899 was included in the bound insurance policy. The Court will not allow Prudential to re-write the Whitmans' complaint to state a misrepresentation claim in order to enjoin the Whitmans from litigating a claim that is

7

not in their complaint. The factual dispute between the parties concerning the terms of the contract is not properly before this Court.

Next, Prudential argues that this Court should enjoin the Whitmans' state court complaint, even if their insurance policies expressly limit the annual premium to $54,899. The Court, however, agrees with the Whitmans that Prudential has not shown that the class settlement released Prudential from honoring the express terms of insurance policies purchased by class members. As explained above, the settlement involved class members' claims arising from the fraudulent sales and marketing scheme perpetrated by Prudential, "regardless whether each class member alleges a churning claim, a vanishing premium claim, an investment plan claim, or some other injury falling within the category of 'other sales' claims." In re Prudential, 148 F.3d at 311.[2] The breach of contract and declaratory judgment claims the Whitmans seek to litigate in their state court complaint have nothing to do with the fraudulent or misleading sales and marketing practices which were the subject of the class action. The Whitmans do not assert in the state complaint that they were induced by fraudulent sales practices to purchase these life insurance policies, nor do they refer to any misrepresentation by Prudential. Rather, they claim that each of their polices provides for a steady premium of $54,899 per year and that Prudential breached the premium term in the policy contract by increasing the annual premium to $109,701. The breach of contract and declaratory claims raised in the Whitmans' complaint were not released in the class settlement, as

---

[2] In approving the settlement, this Court found "plaintiffs would face a difficult burden at trial demonstrating, *inter alia,* (1) class members were deceived by Prudential's written disclosures and illustrations; (2) their contract claims were not barred by the parol evidence rule because they conflict with the unambiguous language in the insurance contracts; (3) the necessary reliance to support their federal securities claims; and (4) their federal securities claims were not barred by the one year statute of limitations and the three year statute of repose." In re Prudential , 148 F.3d at 319. The Whitmans' breach of contract claim does not require the resolution of these issues.

those claims do not arise from the same nucleus of operative facts as the claims settled in the class action, i.e., claims regarding deceptive sales practices and misrepresentations.

The scope of the release is not as broad as Prudential contends. Any doubt about the scope of the release is resolved by the opinions of this Court and the Court of Appeals approving the Prudential Sales Practices Settlement, which clarify that the settlement released only claims of class members arising from Prudential's scheme of deceptive sales practices and misrepresentations. In approving the settlement, this Court and the Court of Appeals rejected the notion that the settlement secured "an all-encompassing release for Prudential." In re Prudential, 148 F.3d at 325. In response to the objectors' contention that the release was all-encompassing, the Court of Appeals found that the released claims are limited to the allegations in the Second Amended Consolidated Complaint and unpleaded claims based on the same factual predicate[3] or nucleus of operative facts as the allegations in the Second Amended Consolidated Complaint, i.e., deceptive sales practices and misrepresentations:

> The crux of the plaintiffs' complaint was that Prudential engaged in a common scheme of deceptive sales practices. Although the Second Amended Consolidated Complaint specifically lists three types of deceptive sales claims—the churning, vanishing premium and investment plan claims—other allegations address conduct which supports the common scheme theory and which does not fall neatly within the three enumerated categories. Therefore, we agree with the district court the "other claims" were properly released. While it is essential to protect the interests of absentee class members, we believe the claims of the absentees here are adequately incorporated in the terms of the settlement. The category of "other claims" are part and parcel of the "common scheme" which underlies plaintiffs' entire case, and are separately addressed in the procedural guidelines which form[] the basis for the ADR process. Finally, the settling parties have represented that the settlement "does not release unknown claims relating to the servicing or administration of class members' policies," but is limited to claims relating to the actual sale of insurance policies.

---

[3] "[A] federal court may release claims which are not in the complaint provided they are based on the 'same factual predicate.'" In re Prudential, 148 F.3d at 326 n.82 (quoting Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1287-88 (9th Cir. 1992)).

In re Prudential, 148 F.3d at 326 (citations and footnotes omitted).

In its Reply, Prudential cites Opinions issued in this case on March 31, 2000 ("Kyrk Opinion"), and September 27, 2007 ("Thomas Opinion), for the proposition that "this Court has previously enjoined state claims that Prudential failed to honor a waiver of premium provision in the class policy." (ECF No. 2033 at 10.) Prudential also cites an Opinion filed on October 12, 2001 ("LaMarra Opinion), for its contention that "[t]his Court has found that similar claims regarding promises as to the amount of premiums due are covered by the Class settlement." (ECF No. 2033 at 9.) This Court has examined the cited Opinions but finds that they do not support Prudential's motion.

The Kyrk Opinion, which Judge Wolin filed on March 31, 2000, supports the Whitmans, as Judge Wolin held that the settlement did not release Prudential from a claim that Prudential failed to comply with the terms of a class member's insurance policy. (ECF Nos. 1589, 2033-2 at 4-26.) Judge Wolin emphasized that "[t]he class action settlement achieves finality for Prudential for claims that may fairly be said to arise out of the sales practices for which it was sued in the class action. It does not absolve Prudential of other legal and contractual responsibilities." (ECF No. 2033-2 at 8.) Judge Wolin denied Prudential's motion to enjoin a complaint filed by Atef Bandary, the beneficiary of a policy previously owned by a deceased William A. Feitz, in the United States District Court for the Central District of California. "Bandary allege[d in the complaint] that Prudential applied improper deductions for premiums Prudential alleged had not been paid. These deductions were wrongful, Bandary claim[ed], because the policy contained a waiver of premium that excused payment during the period Feitz was disabled with his last illness." (ECF No. 2033-2 at 10.) Judge Wolin rejected Prudential's contention that Bandary's claim was

actually founded on an alleged misrepresentation by the Prudential agent who sold the policy to Feitz:

> The only question presented by this application is whether Bandary's claim is one that is related to or arises out of the claims released as part of the class settlement.
>
> The Court answers that question in the negative. The claim here is about the application of a waiver of premium provision in the policy. The case may hold a question of fact regarding when and if Feitz was disabled and what notice he provided or was required to provide to Prudential to invoke the waiver of premium . . . . This case manifestly has nothing to do with the sale of the policy to Feitz.
>
> Prudential's argument that Bandary's complaint actually turns on misrepresentation as to the value of the death benefit is not convincing. The same could be said of any policyholder's claim; disappointed policyholders will, be definition, always be receiving less than they expected. Without more, this truth cannot convert a post-settlement misinterpretation of the policy into a pre-settlement, sales practice claim.
>
> In short, the class action and its settlement did not encompass all coverage disputes between Prudential and its policyholders. As noted above, the class settlement was broad, but it has boundaries. Prudential may not use it as a license to interpret outstanding policies as it sees fit, immune from judicial oversight. Therefore, the Court will deny Prudential's motion with respect to Bandary.

(ECF No. 2033-2 at 11-12.)

Neither the LaMarra Opinion, filed by Judge Wolin on October 12, 2001, nor the Thomas Opinion, filed by the undersigned on September 27, 2007, support Prudential's motion to enjoin the Whitmans. In the Thomas Opinion, the undersigned granted Prudential's motion to enjoin Walter Thomas from litigating claims that Prudential agent David Smith made misrepresentations when he sold Thomas a life insurance policy in 1995 and that Prudential committed improper replacement or churning. Unlike the breach of contract claim raised in the Whitmans' complaint, Thomas's claims arose from the same nucleus of operative facts as the Second Amended Consolidated Complaint in the Sales Practices Litigation, i.e., deceptive sales practices. Similarly, none of the actions enjoined by Judge Wolin in the LaMarra Opinion raised a breach of contract claim like the claim raised by the Whitmans. Moreover, the following statement in the LaMarra

Opinion supports the Whitmans: "[P]olicyholders' rights to death benefits payable under the explicit terms of Prudential policies were not released in the class settlement." (ECF No. 2030-3 at 160).

In sum, the Prudential Sales Practices Settlement did not release Prudential from complying with the express terms of the Whitmans' insurance policies.[4]  Prudential has not shown that it is entitled to enjoin the Whitmans from pursuing <u>Whitman v. The Prudential Ins. Co. of America</u>, Docket No. MRS-L-2247-14, in the Superior Court of New Jersey.  This Court will deny the motion.

### **CONCLUSION**

This Court will deny Prudential's motion to enjoin Wynne Whitman and Stacy Whitman and will enter an appropriate order.

       s/Dickinson R. Debevoise
       **DICKINSON R. DEBEVOISE**
       **U.S.S.D.J.**

Dated:   June 3, 2015

---

[4] Although Prudential contends that the Whitmans' policies do not include a term limiting the annual premium to $54,899, as previously stated, this is a factual question to be decided in the New Jersey courts when it resolves the breach of contract claim raised in the Whitmans' complaint.