Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE THE PRUDENTIAL INSURANCE COMPANY OF AMERICA SALES PRACTICES LITIGATION** | Civil Action No. 95-4704 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is Prudential Insurance Company of America's ("Defendant") motion to enforce the Final Order and Judgement issued in this case (D.E. No. 627) against plaintiffs Nicole Tierney, John Tierney, and Virginia Tierney (collectively, "Plaintiffs") and enjoin Plaintiffs from pursuing an action against Defendant that is currently pending in the Superior Court of New Jersey. (D.E. No. 2038-1 ("Motion")). The Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated herein, the Court DENIES Defendant's Motion.

**I.      BACKGROUND**

      **A.      Final Order and Judgment**

This case stems from a large group of policyholders' claims that Defendant "engaged in a systematic fraudulent marketing scheme in which its agents wrongfully induced policyholders to purchase certain Prudential life insurance policies" (the "Class Action"). *In re Prudential Ins. Co.*

*of Am. Sales Practices Litig.*, 962 F. Supp. 450, 473–74 (D.N.J. 1997).[1] On March 17, 1997, the Court entered (as amended on April 14, 1997) a 152-page Final Order and Judgment, whereby the Court, *inter alia*, certified a class for settlement purposes (the "Settlement Class") and approved the proposed settlement between the Settlement Class and Defendant (the "Settlement"). The Settlement Class consisted of the following:

> All persons who own or owned at termination an individual permanent whole life insurance policy issued by Prudential or any of its United States life insurance subsidiaries during the Class Period of January 1, 1982 through December 31, 1995 (the "Policy" or "Policies"), except as specifically described below ("Policyholders"), and have not timely excluded themselves from participating in the Settlement.[2]

*Id.* at 565 ("Class Members").

The Settlement provided for an alternative dispute resolution ("ADR") process, through which Class Members could file claims with Defendant and potentially obtain either full rescission and restitution, or full benefit of the bargained-for relief. *Id.* at 468. In exchange, the Final Order and Judgment prohibited all Class Members, or those acting on their behalf, from participating in litigations in any jurisdiction, if such suits involve claims covered by the Class Settlement. Specifically, the Final Order and Judgment stated that

> [a]ll class members, and all persons acting on behalf of or in concert or participation with any class member, are hereby permanently enjoined from this day forward from filing, commencing, prosecuting, intervening, or participating in any lawsuit on behalf of any class member in any jurisdiction based on or relating to the facts and circumstances underlying the claims and causes of action in this lawsuit or the Released Transactions.

---

[1] Because documents entered on the docket before January 16, 2004, including the Final Order and Judgment, are no longer available on the Court's Electronic Case Filing ("ECF") system, the Court will cite to the pertinent case law reporters wherever possible.

[2] The exceptions to the definition of Policyholders are not relevant to the instant motion as Plaintiffs do not any of the three exceptions..

2

*Id.* at 566. "Released Transactions" were further defined as:

> [T]he marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, servicing, or replacement by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of the Policies or any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Policies.

(D.E. No. 2038-6 ¶ bc). The Third Circuit subsequently held that the claims released by the Settlement included specifically pleaded claims, as well as unpleaded claims based on "the same factual predicate or nucleus of operative facts" as alleged in the Class Action, "i.e., deceptive sales practices and misrepresentations." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F. 3d 283, 325–26 (3d Cir. 1998).

Finally, as part of the Final Order and Judgment, the Court retained "exclusive jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Stipulation of Settlement and of this Final Order and Judgment, and for any other necessary purpose." *In re Prudential*, 962 F. Supp. at 566.

### B.     The State Action

On October 17, 2018, Nicole Tierney, on behalf of herself and as executrixes of the estates of her father and mother, John Tierney and Virginia Tierney, filed a complaint in the Superior Court of New Jersey (the "State Action"). (D.E. No. 2038-3 ("Complaint" or "Compl.")). The Complaint asserts three claims against Defendant: breach of contract, breach of implied covenant of good faith and fair dealing, and violation of the New Jersey Consumer Fraud Act ("NJCFA"). (*Id.* at 1826). Plaintiffs allege that, subsequent to the deaths of John Tierney and Virginia Tierney, Nicole Tierney discovered that John Tierney was the owner and insured of Policy 73 340 684 (the "Term Policy"), which insured the life of John Tierney in the amount of $350,000 and named Virginia Tierney as the beneficiary. (*Id.* ¶¶ 1823 & 25). During her attempts to make a claim for

3

the benefits covered under the Term Policy, Nicole Tierney was informed by Defendant that, on or about December 2, 1986, the Term Policy was converted to a new policy, Policy 73 943 441 (the "Whole Life Policy") (*id.* ¶ 31), which was then surrendered for its cash value on or about April 7, 1994 (*id.* ¶ 38).  Nicole Tierney was told that, while the Whole Life Policy insured John Tierney, its owner and beneficiary was a company named Delaware Farms, Inc ("Delaware Farms").  (*Id.* ¶40).  Plaintiffs believed that John Tierney owned one third of Delaware Farms at the time that the alleged conversion occurred and was listed as the president of the company.  (*Id.* ¶¶ 36 &54).  Defendant informed Nicole that, because the Term Policy was converted to the Whole Life Policy and the Whole Life Policy was surrendered for cash value, neither policies provided any life insurance protection and neither had any cash value.  (*Id*. ¶ 38).

As proof that John converted the Term Policy to the Whole Life Policy, Defendant provided Nicole with, *inter alia*, a document titled "Application for Change of Policy No. 73 340 684," dated November 26, 1986 (the "Application of Change"), as well as an accompanying document titled "Request for Acknowledgement (Certificate) of Insurance," dated December 3, 2018 ("Request for Acknowledgement").  (*Id.* ¶ 41; D.E. No. 2048 at 63–69[3]).  According to Plaintiffs, however, these documents show that the conversion that allegedly occurred in 1986 "was not done in conformity with the express conditions precedent" required by the Term Policy. (Compl. ¶ 68).  Plaintiffs allege that, *inter alia*, (i) the original Term Policy was never surrendered as required; (ii) the Application of Change was not completed; (iii) the signatures of John Tierney and Virginia Tierney on the Request for Acknowledgement were dated one day after the conversion allegedly occurred; (iv) the signature of Virginia Tierney was forged; and (v) the authenticity of John Tierney's signature is also questionable.  (*Id.* ¶¶ 68–70).

---

[3]      Unless specified otherwise, citations to Docket Entry Number 2048 refer to the pagination generated by the Court's ECF system.

4

In their State Action, Plaintiffs allege that "[b]ut for [Defendant's] fraudulent actions and unconscionable practices, [the Term Policy] would have been in effect at the time of John Tierney's death, and Virginia Tierney, his wife and beneficiary, would have been entitled to money owed pursuant to the coverage and death benefits provided by [the Term Policy]." (*Id.* ¶ 74). Plaintiffs continue that Defendant "failed to perform and materially breached the contract when it fraudulently converted [the Term Policy] and by wrongfully failing to pay benefits owed" (*id.* ¶ 114); "breached its duty to deal fairly and in good faith by engaging in conduct calculated to further its own economic interests at the expense of the [Plaintiffs] (*id.* ¶ 120); and violated the NJCFA through its unconscionable commercial practice, including "false promises," "affirmative misrepresentations," "knowing omissions," and "act of deception" (*id.* ¶¶ 135 & 137).

### C.     Motion to Enforce the Final Order and Judgment

In response to the State Action, Defendant moves to enforce the Final Order and Judgment issued by this Court on March 17, 1997. (D.E. No. 2038). Defendant alleges that, because Plaintiffs failed to timely exclude themselves from the Settlement Class and their state claims are "based on or relating to the facts and circumstances underlying the claims and causes of action" in the Class Action, the Court should enjoin Plaintiffs from proceeding with the State Action. (D.E. No. 2038-1 ("Def. Mov. Br.") at 1–2). Plaintiffs filed their opposition (D.E. No. 2047 ("Pl. Opp. Br."), to which Defendant replied (D.E. No. 2049 ("Def. Reply Br.")). On December 16, 2019, the Court issued an Order directing the parties to file supplemental briefs regarding whether Plaintiffs, by asserting claims against Defendant, acted on behalf of or in privity to any Class Member. (D.E. No. 2050 ("2019 Order")). Defendant submitted its supplemental briefing on January 10, 2020 (D.E. No. 2051 ("Def. Suppl. Br."), to which Plaintiffs responded (D.E. No. 2052 ("Pl. Suppl. Br.")).

5

**II.     DISCUSSION**

Under the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Anti-Injunction Act "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers,* 398 U.S. 281, 286 (1970). While "designed to ensure the effectiveness and supremacy of federal law," the exceptions are narrow. *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 146 (1988). As a result, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R. Co.*, 398 U.S. at 297.

The All-Writs Act, on the other hand, authorizes federal courts "to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). As such, federal courts may issue injunctions to stay state court proceedings if the injunctions are authorized under the All-Writs Act and are not barred by the Anti-Injunction Act. *See Carlough v. Amchem Prod., Inc.,* 10 F.3d 189, 201 n.9 (3d Cir. 1993) (stating that "[t]he two statutes act in concert to permit issuance of an injunction"). Where, as here, a defendant seeks to enjoin a state action based on a settlement approved in a prior federal class action, "[t]he applicable exception to the Anti-Injunction Act is the 'necessary in aid of jurisdiction' exception." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, No. 95-4704, 2015 WL 3490113, at *4 (D.N.J. June 3, 2015) (citing *In re Prudential Ins. Co. of America Sales Practices Litigation*, 261 F.3d 355, 365 (3d Cir.2001)). To determine whether the injunction

sought is necessary in aid of jurisdiction, a court must examine whether the plaintiff is a class member and whether the plaintiff's state claim "arises from the same nucleus of operative facts" as the claims settled in the class action. *See In re Prudential*, 2015 WL 3490113, at *4.

In their initial briefs, the parties do not dispute that the Whole Life Policy was a Class Policy and that, as a result, the owner of the Whole Life Policy, Delaware Farms, was a Class Member. (Def. Mov. Br. at 5 ("Delaware Farms, Inc., as the policy-owner, qualifies as a Class Member."); *see* Pl. Opp. Br. at 25–26). The parties also agree that Plaintiffs are not Class Members. (Pl. Opp. Br. at 31 ("Plaintiffs were not class members, were given no opportunity to participate in the [S]ettlment, and thus cannot be bound."); *see* Def. Reply Br. at 2 ("It does not matter that Plaintiffs themselves did not participate in the Class Settlement.")). But the parties disagree, however, whether Plaintiffs are nonetheless precluded from asserting the claims against Defendant.

Defendant argues that, because the Final Order and Judgment prohibits claims arising from policies "sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of" the class policies, Plaintiffs' claims surrounding the conversion to the Whole Life Policy are "squarely within [] and barred by" the Final Order and Judgment. (Def. Mov. Br. at 9). Defendant further contends that "[i]t does not matter that Plaintiffs' themselves did not participate in the Class Settlement." (Def. Reply Br. at 2). Because Plaintiffs' claims of improper conversion and breach of contract, allegedly, "belong exclusively to" Delaware Farms, Defendant argues that Plaintiffs essentially seek to assert rights on behalf a Class Member. (*See* Def. Mov. Br. at 4–5).

Plaintiffs insist that they are not Class Members and, thus, are not bound by the Final Order and Judgment. (Pl. Opp. Br. at 25–26 & & 34–35). They also argue that they are not "claiming benefits on behalf of Delaware Farm." (*Id.* at 26). Indeed, Plaintiffs argue that they are not even

7

seeking to enforce Delaware Farms's Whole Life Policy because they "never admit or concede" that the Term Policy was properly converted. (*Id.* at 31).

The Court's December 16, 2019 Order directed the parties to file supplemental briefing (i) "to properly explain–with factual and legal support—how Plaintiffs acted on behalf of Delaware Farms"; and (ii) to address whether, even if Plaintiffs are not Class Members and do not act on behalf of any Class Members, they should still be bound by the Settlement because they are nonparties "in privity with someone who was a party to the prior suit." (2019 Order ¶¶ 6–9).

In its supplemental brief, Defendant argues for the first time that the ownership and beneficiary of the Term Policy was transferred to Delaware Farms *before* the alleged conversion. (Def. Suppl. Br. at 3–4; D.E. Nos. 2051-2 & 2051-3). Defendants submitted three documents from November 26, 1986, indicating that on that day, John Tierney applied to change the owner and beneficiary of the Term Policy to Delaware Farms and, at the same time, applied to convert the Term Policy to the Whole Life Policy. (D.E. Nos. 2051-2 & 2051-3). Defendant thus argues that "Plaintiffs were not the owner of the Term Policy at the time of its conversion and, therefore, had no rights independent of the rights belonging to Delaware Farms." (Def. Suppl. Br. at 5). Defendant continues that, "in order for Plaintiffs to assert any claims challenging the conversion of the Term Policy to the Class Policy, Plaintiffs must necessarily do so through Delaware Farms," which triggers the Final Order and Judgment that precludes Plaintiffs' claims.

The Court is not persuaded. To invoke this Court's jurisdiction to enforce its Final Order and Judgment, Defendant must show that (i) Plaintiffs' state claims "arise[] from the same nucleus of operative facts" as the claims settled in the Class Action; *and* (ii) Plaintiffs were Class Members or acted "on behalf of or in concert or participation with" a Class Member. *See In re Prudential*, 2015 WL 3490113, at *4. By arguing that Plaintiffs necessarily seek to assert rights on behalf of

8

Delaware Farms because "the alleged sales practices are in fact the very same type of deceptive practices as those at issue in the [Class Action] that resulted in the Final Order and Judgment," Defendant conflates the two requirements it must establish to enjoin Plaintiffs' State Action.

Plaintiffs' claims are not asserted on behalf of Delaware Farms. In Count I of their Complaint, Plaintiffs allege that the Term Policy "constituted a contract between John Tierney and [Defendant]" and that "Virginia Tierney was the disclosed intended third-party beneficiary of this contract." (Compl. ¶¶ 109–10). According to the Complaint, because of Defendant's "fraudulent behavior," including "dishonestly witnessing the forged signature of Virginia Tierney or forging the signature of Virginia Tierney," "Virginia Tierney has suffered damages and continues to suffer damages." (*Id.* ¶ 115). In Count II, Plaintiffs allege that Defendant has "a duty to deal fairly and in good faith with Plaintiffs." (*Id.* ¶ 117). Defendant allegedly breached this duty by, *inter alia*, "inducing John to buy various policies without informing him of the result thereof," "forging Virginia Tierney's signature," "failing to conduct a proper investigation into claims of fraud and forgery," and "misrepresenting to Plaintiffs that [the Term Policy] was properly and legally converted and no longer has value." (*Id.* ¶¶ 121–29). As a result of the breach, Plaintiffs contend that "Virginia Tierney has suffered damages and continues to suffer damages." (*Id.* ¶ 130). Finally, in Count III, Plaintiffs allege that Defendant made "false promises," "affirmative misrepresentations," "knowing omissions," and various "unconscionable commercial practice and/or act of deception." (*See id.* ¶¶ 138–141). Accordingly, "the plaintiff," presumably Virginia Tierney, "has suffered and will suffer ascertainable and substantial financial losses" in an amount not less than $15,000. (*See id.* ¶¶ 136 & 143).

While the Complaint uses "the plaintiff" and "the plaintiffs" interchangeably, and at times it is unclear whether certain claims were asserted on behalf of all Plaintiffs, given Plaintiffs' *pro*

9

*se* status, the Court construes Plaintiffs' pleading "to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training," *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Under a liberal construction, it is clear that Plaintiffs' claims are based on their own rights and injuries, separate and independent from the rights and injuries of Delaware Farms. Defendant repeatedly argues that "Plaintiffs have no claims to make" without a relationship to Delaware Farms. (*See* Def. Suppl. Br. at 6). This argument misses the mark. To the extent that Defendant is correct that the claims asserted against it "belong exclusively to one or more Class Members," which Plaintiffs are not, that argument may be relevant in the State Action in support of a dispositive motion but it does not support Defendant's motion to enforce the Final Order and Judgment against Plaintiffs.[4] Plaintiffs, as non-Class Members asserting claims on their own behalf, are not precluded by this Court's Final Judgement and Order under the basic principles of prelcusion. *See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) ("Estoppel, however, is limited by the due process principle that '[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.'") (quoting *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 798 (1996)) (alternation in original).

Moreover, while relying on more than a dozen opinions issued in this case, Defendant fails to identify any time in which the Court enforced the Final Order and Judgement against a non-Class Member or someone who did not act on behalf of a Class Member.[5] Defendant argues that

---

[4] To be clear, the Court does not address whether the alleged conversion of the Term Policy to the Whole Life Policy was proper. Neither does the Court make any factual finding as to whether the ownership and beneficiary of the Term Policy were changed before the alleged conversion. As discussed in this Opinion, these issues are not pertinent to the instant motion.

[5] *See, e.g.*, *In re Prudential (Lowe)*, 261 F.3d at 362 ("Marvin and Alice Lowe . . . are members of the class because they purchased five Prudential insurance policies between 1981 and 1989."); *In re Prudential Ins. Co. of Am.*

10

the Court barred Guy C. Glenn, who allegedly did not own a Class Policy, from "pursing claims on Class Policy owned by First Trust Company of Montana naming Glenn as insured and from pursing claims on non[-]Class Policies allegedly used to purchase Class Policies." (Def. Mov. Br. at 10). The Court's opinion, however, stated that the ownership of the pertinent Class Policy was transferred from Glenn to First Trust Company of Montana on August 11, 1997. (*See* D.E. No. 2038-8 at 13[6]). In other words, Glenn owned one or more Class Policies "during the [c]lass [p]eriod of January 1, 1982 through December 31, 1995," making him a Class Member who, as the Court found, failed to "exclude [himself] from the [C]lass." (*Id.* at 28). Accordingly, while this Court and the Third Circuit have interpreted the Released Transactions to include claims arising from transactions directly or indirectly that led to the sale of Class Policies, the Final Order and Judgment's preclusive effect extends only to the "[C]lass [M]embers, as well as their heirs, executors and administrators, successors and assigns." *See In re Prudential*, 962 F. Supp. at 565.

Finally, Defendant fails to show that the Final Order and Judgment binds Plaintiffs because they are in privity with Delaware Farms. As the Court discussed in its December 16, 2019 Order, "[a] well-established exception to [the collateral estoppel] bar exists when the nonparty is in privity with someone who was a party to the prior suit." *Nationwide Mut. Fire Ins.*, 571 F.3d at 310. In

---

*Sales Practices Litig. (La Marra)*, 314 F.3d 99 (3d Cir. 2002) ("Plaintiffs Frank and Giuseppina La Marra are New Jersey residents who purchased nine life insurance policies from Prudential for themselves and their children."); D.E. No. 2038-8 (*Davis*) at 20 (finding that Class Members Laurence P. Davis and Joanne D. Davis "did not exclude themselves from the [C]lass"); *id.* (*Landy*) at 49 (stating that Class Member Lowell Landy "chose to exclude from the class his 1984 and 1993 policies, but not his 1986 and 1987 policies which were class eligible"); *id.* (Roberts) at 58 (explaining that Class Member Clarence P. Roberts filed claims in the Class Action's ADR process); *In re Prudential Ins. Co. of Am. Sales Practices Litig.(Adamakis, et al.)*, 177 F.R.D. 216 (D.N.J. 1997) (referring to the parties who were bound by the Final Order and Judgment as "Class Members"); D.E. No. 2038-8 (Ermlich) at 69 (stating that the party who was bound by the Final Order and Judgment owned the Class Policies); *id.* at 95 (Mayone) (referring to the party who was bound by the Final Order and Judgment as the policyholder); *id.* at 116–17 (finding that the policies at issue were Class Policies) (incomplete opinion); *id.* at 125 (*Allen*) (stating that the party who was bound by the Final Order and Judgment owned the Class Policies).

[6] Unless otherwise specified, citations to Docket Entry Number 2038-8, which is a compendium of non-published decisions and orders issued in this instant action filed in support of Defendant's Motion, refer to the pagination generated by the Court's ECF system.

cases where, as here, federal courts sit in diversity, the applicable preclusion law is that of "the [s]tate in which the federal diversity court sits." *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). In New Jersey, "privity" is generally "used to say that the relationship between the one who is a party on the record and another is close enough to include the other within the res judicata." *Zirger v. Gen. Accident Ins. Co.*, 676 A.2d 1065, 1071 (N.J. 1996) (quoting *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir.) (applying New Jersey law) (Goodrich, J., concurring)). "A relationship is usually considered close enough only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation." *Id.* (quoting *Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 176 (3d Cir. 1994) (applying New Jersey law)) (internal quotation marks omitted); *McCluskey v. Waste Management, Inc.*, 794 Fed. App'x, 181, 184 (3d Cir. 2019).

In its supplemental brief, Defendant does not address whether Delaware Farms "is a virtual representative of" Plaintiffs in the Class Action. Instead, Defendant merely argues that John Tierney "acted on behalf of and as a representative of Delaware Farms" with respect to the various pre-litigation transactions involving the Term Policy and the Whole Life Policy. (*See* Def. Suppl. Br. at 8–9). In so arguing, Defendant fails to address the pertinent relationship—that is, whether Delaware Farms, as a Class Member, was a representative of John Tierney, Virginia Tierney, and Nicole Tierney; not the other way around. Defendant also briefly discusses that John Tierney was at one point the president of Delaware Farms and owned one third of the company, and that the Settlement notice sent to Delaware Farms was addressed to what appears to be John Tierney's home address. (*See* Def. Suppl. Br. at 4–5 & 8). These allegations, even accepted as true, do not establish that John Tierney, at the time of the Class Action, "actually control[led] the litigation." *See Zirger*, 676 A.2d at 1071. It follows that Virginia Tierney and Nicole Tierney, who Defendant

12

alleges "merely stand in John Tierney's shoes," are likewise not in privity with Delaware Farms. (*See* Def. Suppl. Br. at 9).

At various places in its submissions, Defendant relies on *In re Prudential Ins. Co. Am. Sales Practice Litig. (Hicks)* and argues that the same logic in *Hicks* applies here. (*See* Def. Reply Br. at 6–7; Def. Suppl. Br. at 7; D.E. No. 2038-8 at 14–15 & 38–39). There, the Court barred Joan Hicks's claims arising from a lapsed term policy, which her late husband, Robert Hicks, converted to a Class Policy. (D.E. No. 2038-8 at 14–15). The Court explained that the Class Settlement may reach the lapsed policy because it "was involved in a transaction that resulted in the issuance of" the Class Policy. (*Id.* at 38–39). *Hicks* is distinguishable because it was undisputed that Robert Hicks was a Class Member, through whom Joan Hicks asserted a claim "for a death benefit on the lapsed term policy." (*See id.* at 14–15 (stating that Class Notice was mailed to Robert Hicks)). Here, however, John Tierney was not a Class Member, and nothing in the record suggests that Plaintiffs are close enough with Delaware Farms such that there is "an identification of interest between the two as to represent the same legal right." *See Zirger*, 676 A.2d at 1071 (quoting *Moore v. Haefeeza*, 515 A. 2d 271, 273 (Ch. Div. 1986)).

Because the parties agree that Plaintiffs are not Class Members, and because Defendant fails to show that Plaintiffs were in privity with or seek to assert their claims on behalf any Class Member, the Court finds that Plaintiffs are not bound by the Final Order and Judgment.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion is DENIED. An appropriate Order accompanies this Opinion.

Date: February 17, 2021          *s/Esther Salas*
                                 **Esther Salas, U.S.D.J.**